**In re UITERWYK CORPORATION, Debtor.**

**Bankruptcy No. 83–166–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Dec. 23, 1987.

Cindy L. Turner, Tampa, Fla., for debtor.

Charles S. Donovan, San Francisco, Cal., for Itel Corp.

Alfred Kuffler, Philadelphia, Pa., for Uiterwyk Corp. at Iran–United States Claims Tribunal.

### ORDER ON MOTION FOR CONTEMPT AND DAMAGES

ALEXANDER L. PASKAY, Chief Judge.

This is a Chapter 11 case and the matter under consideration is a Motion for Contempt and Damages filed by Uiterwyk Corporation, the Debtor in the above captioned case. The Debtor seeks the entry of an Order finding Itel Corporation (Itel) and Charles S. Donovan, Esquire (Donovan) to be in contempt, and the Debtor also seeks a monetary award in its favor based upon the alleged damages it has suffered. Finally, the Debtor seeks punitive damages against both Itel and Donovan, and "such other and further relief as may be just," for their alleged violation of § 362 of the Bankruptcy Code. At the duly scheduled and noticed hearing this Court heard argument of counsel and considered the record which reveals the following facts relevant and germane to the motion under consideration.

The Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on January 27, 1983. Prior to its filing, Debtor had been engaged in the business of operating as the U.S. General Agent for various shipping lines. Its services as general agent included the solicitation of cargo, the filing of U.S. tariffs, arranging for the discharge and loading of vessels, negotiation of contracts, and various other services necessary for the operation of a shipping line. Events in Iran commencing in approximately 1978 caused Iran Express Lines, a line represented by the Debtor, to be unable or unwilling to reimburse the Debtor for a large number of expenses in excess of freights collected by it on behalf of the principal. Further, Iran Express Lines, the principal, was unable or unwilling to return a number of containers, and the owner/lessors of these containers (such as Itel) sought to charge the Debtor for the continuing per diem costs related to the containers or for the value of the unreturned containers. These factors led ultimately to the cessation of operations and the filing of the Chapter 11 case by the Debtor.

The Debtor filed a claim with the Iran–U.S. Claims Tribunal in the Hague arising out of the general agency agreement with Iran Express Lines, the provision of containers to that company, and contingent liabilities incurred by the Debtor in order to facilitate the operations of its principal both here and abroad. The amount claimed by the Debtor in the Tribunal is in excess of $20,000,000.00 United States dollars, plus interest for a period of approximately five (5) years, and attorneys fees that may be awarded in the discretion of the Tribunal. This claim constitutes the Debtor's primary asset, and represents the source from which the Debtor proposes to fund its Plan of Reorganization.

The Debtor's claim was filed in the Hague in 1982. Itel and several other container owners also asserted claims at the Tribunal directly against the Government of Iran and Iran Express Lines for losses

suffered with respect to the containers leased to the Debtor which, in turn, had been leased to Iran Express Lines. It is important to note that successful claimants in the Tribunal are awarded payments from an account which the Government of Iran is obligated to replenish each time that the account is reduced or depleted. There is great concern among the claimants, however, that Iran may breach its obligation to restore the fund at any time. From the inception of this matter in the Hague, the Iranian respondents sought consolidation of the container owners' claims with the Uiterwyk claim. Even though this request was again asserted at the Prehearing Conference in May of 1984, the Tribunal has refused to consolidate the cases.

The Debtor's claim was arbitrated in November of 1986, approximately four (4) years after it was filed. Since that time, the Debtor has been awaiting the Tribunal's decision and award, with no further proceedings expected to be conducted.

Nevertheless, on April 7, 1987, almost six (6) months after the proceedings on Debtor's claim had been concluded, Donovan wrote a letter addressed to the Honorable Karl–Heinz Bockstiegel, the Chairman of Chamber One of the Tribunal. The letter states in relevant part:

I am writing especially to you on this subject because I understand that Uiterwyk's claim is being considered by Chamber One at present. . . . I am concerned that Chamber One not make a determination on Uiterwyk's status without having first heard Itel's side of the story.

For this reason, we support the Government of Iran's suggestion that Itel's case be consolidated with Uiterwyk's case and that the two cases be considered together.

Debtor promptly responded to this letter by writing to Donovan and demanding immediate retraction of the correspondence. Debtor's letter informs Itel that: (1) Debtor considered Itel's conduct to be a violation of the automatic stay; (2) that the letter is far beyond any relief from the stay obtained by Itel; and (3) that Debtor would pursue all of its available remedies in the event that no retraction was forthcoming.

Itel and Donovan refused to retract, instead sending Debtor's counsel a letter and again corresponding with Judge Bockstiegel on May 21, 1987. In his May 21st letter, Donovan again sought consolidation of the cases, well after the Debtor's claim had been fully arbitrated.

According to the best information available, none of the container cases (including Itel's claim) are yet near to being heard on the merits in the Hague. Consequently, if Itel's request for consolidation were to be granted at this point, almost a year after Debtor's entire case has been heard, delay in the issuance of a decision and award would be inevitable.

It is the Debtor's contention that they are entitled to the entry of an order determining Itel and Donovan to be in contempt and to an award of damages for their willful violation of the automatic stay. In support of its claims, the Debtor relies on § 362 of the Bankruptcy Code and contends that the acts of Itel and Donovan were acts impacting on the Debtor's choses in action, which the Debtor contends are clearly property of the estate. The Debtor argues that Itel and Donovan's attempts to consolidate their case with the Debtor's would delay or undermine the Debtor's reorganization. The Debtor contends that the automatic stay is not only designed to give the Debtor "a breathing spell" but is also designed to protect other creditors of the debtor and preventing "a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *Hunt v. Banker's Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986).

It is the Debtor's proposition that its claim in the Tribunal is property of the estate pursuant to § 541(a)(1) of the Bankruptcy Code and that Itel's attempt to consolidate its claim with that of the Debtor's is a clear violation of the automatic stay which prohibits "any act to *exercise control over property of the estate.*" (emphasis added) § 362(a)(3) of the Bankruptcy Code.

In opposition, Itel and Donovan contend the following: (1) that the property which Debtor is claiming in the hands of a third party is "not property of the estate" until the Debtor has won that litigation. For this proposition, Itel and Donovan cite *Price & Pierce International, Inc. v. Spicers International Paper Sales, Inc.*, 50 B.R. 25 (Bankr.S.D.N.Y.1985), (2) that because the property is not property of the estate the provision of the automatic stay prohibiting "any act to exercise control over property of the estate" does not apply to the conduct of Itel and Donovan; and (3) that the conduct of Itel and Donovan is solely for the purpose of advancing Itel's own claim in the Tribunal and nothing in § 362 specifically bars such conduct.

■ A resolution of the matter under consideration is governed by § 362 and § 541 of the Bankruptcy Code. § 541 of the Bankruptcy Code provides in pertinent part:

§ **541. Property of the estate**

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

The Notes of the Committee on the Judiciary, Senate Report No. 95–989, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, explain subparagraph (a)(1) as follows:

The scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes or action (see Bankruptcy Act Section 70a(6) [former section 110(a)(6) of this title]) and all other forms of property currently specified in section 70a of the Bankruptcy Act ...

[T]his paragraph will include choses in action and claims by the debtor against other ...

Clearly, the Debtor's claim in the Tribunal is property of the estate. Itel's reliance on *Spicers*, supra, is inappropriate in that in *Spicers*, a distinct fund had been established and deposited with the Clerk of the Court and several parties claimed entitlement to the fund through an interpleader action. The Court there noted that an action against money held by a third party is "indisputably outside § 362." *Spicers*, 50 B.R. at 26. The important difference between the *Spicers* case and the case herein, is that there has been no showing to the Court that a specific fund has been established as contemplated by an interpleader action, or that Itel is competing against the Debtor to recover the same property. Absent such a showing, this Court is satisfied that the Debtor's claim in the Tribunal is property of the estate within the meaning of § 541(a)(1) of the Bankruptcy Code.

■ The next issue which must be resolved is whether or not Itel's attempt to consolidate its claim with the Debtor's constituted a willful violation of the automatic stay. There is no question as to either Itel's or Donovan's knowledge of the pendency of Debtor's Bankruptcy case. Itel, through Donovan, has appeared in this Court and requested that the automatic stay be modified to permit Itel to proceed with an action commenced by Itel in the United States District Court for the Eastern District of Louisiana, Case No. 80–2328. On April 6, 1984, this Court entered an Order modifying the automatic stay to allow the Louisiana action to proceed and also allowing Itel to levy against a bond posted in that action. The Order further states:

Except as provided in the preceding paragraph, Itel and Itel Containers shall refrain from executing any judgment obtained in the Louisiana action against property of Uiterwyk Corporation.

§ 362(a)(3) of the automatic stay provides that the automatic stay operates to prohibit any act to "exercise control over property of the estate". Itel maintains its conduct was only in furtherance of its own claim in the Tribunal. Concededly, as the Debtor maintains, a consolidation of Itel's claim with that of the Debtor's would delay a final decision being made on Debtor's claim in the Tribunal. However, this Court is satisfied that such conduct is not proscribed by the automatic stay provisions of

662

the Bankruptcy Code. The automatic stay is not so broad as to prohibit one from zealously advocating its own claim or chose in action even if it might unintentionally interfere with a claim of a Debtor. Although Itel's conduct may result in an interference with the Debtor's claim in the Tribunal, this Court is satisfied that the interference was merely a technical violation of the automatic stay and was not done with the willful intent to control the Debtor's claim in the Tribunal.

Based on the foregoing, this Court is satisfied that although Itel and Donovan's attempt to consolidate Itel's claim with the Debtors could concededly result in a delay of a final decision being made in the Debtor's claim, their conduct was merely a technical violation of the automatic stay. Hence no sanctions may be imposed against Itel and Donovan.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Contempt and damages be, and the same is hereby, denied without prejudice.